Affirmed in Part, Reversed and Rendered in Part, and Majority and
Dissenting Opinions filed July 24, 2003
















Affirmed in
Part, Reversed and Rendered in Part, and Majority and Dissenting Opinions filed
July 24, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00763-CV

____________

 

EXXON CORPORATION, Appellant and Cross-Appellee

 

V.

 

JAMES MAKOFSKI, SR., AS NEXT FRIEND OF JAMES MAKOFSKI, JR.; BARTON
RUSSELL, AS NEXT FRIEND OF JOHN RUSSELL; ANDREA RUSSELL; SAN JUANITA DEVORA;
FELIPE DEVORA; AND CODI STENNETT, Appellees
and Cross-Appellants

 

_______________________________________________________________________

 

On Appeal from the 269th District Court

Harris County, Texas

Trial Court Cause No. 93-04644-A

 

_______________________________________________________________________

 

D I S S E N T I N G   O P I
N I O N

            The
majority erroneously parses the appellate record and fashions a result by
reducing the gatekeeper’s Robinson
hearing to a nullity.  My colleagues have
decided to treat reliability as an evidentiary jury issue; moreover, they
misapply appellate rules and case precedent. 
I dissent.




The Issue is Reliability and
the Gatekeeper is Essential

            The
issue on appeal is reliability:  Exxon
contends that plaintiffs’ experts’ opinions[1] “are not
evidence because they are unreliable and founded on unproven assumptions.”  The majority reviews the reporter’s record
from trial and scientific studies that are not included in this appellate
record and concludes the plaintiffs presented no evidence of reliability before
the jury and thus no evidence of medical causation.  There are two glaring errors in the
majority’s approach.  First, they simply
ignore the evidentiary Robinson
hearing held by the trial court, disregarding it as though it is a
nullity.  Second, the majority confuses
the jury’s role, mistaking reliability as an element to be proved before the
jury. 

1.  Trial Court
Determines Reliability, Preferably Pretrial

            Because
the issue is reliability, it is imperative that we review both the trial record
and the pretrial Robinson
hearing.  Tex. R. App. P. 34.1. 
The trial court has the heightened responsibility to act as a gatekeeper
in a Robinson hearing to screen out
unreliable expert evidence.  Gen. Motors Corp. v. Sanchez, 997 S.W.2d
584, 590 (Tex. 1999); Maritime Overseas Corp. v. Ellis, 971
S.W.2d 402, 409 (Tex. 1998); E.I. du Pont de
Nemours & Co., Inc. v. Robinson, 923 S.W.2d 549, 556 (Tex.
1995).  This is true because reliability
of an expert’s opinions is a question of admissibility.  Helena
Chem. Co. v. Wilkins, 47 S.W.3d 486, 499 (Tex. 2001); Gammill v. Jack Williams Chevrolet, 972 S.W.2d
713, 726 (Tex. 1998)
(“All expert testimony should be shown to be reliable before it is
admitted.”).  “Preliminary questions . .
. concerning admissibility of evidence shall be determined by the court . . .
.”  Tex.
R. Evid. 104(a); see also Gammill,
972 S.W.2d at 718; Robinson, 923
S.W.2d at 556; Tex. R. Evid. 705(c) (“If the court determines that the
underlying facts or data do not provide a sufficient basis for the expert’s
opinion under Rule 702 or 703, the opinion is inadmissible.”).

            The
majority, without citation to any authority, brushes aside the evidentiary Robinson hearing in this case as “a
different decision-maker in a different proceeding.”  They could not be more wrong.  First, the roles of the trial court and jury
as decision-makers are not coterminous; the trial court is not a fact
finder:  “The trial court’s role is not
to determine the truth or falsity of the expert’s opinion.”  Robinson,
923 S.W.2d at 558; Weingarten Realty
Advisors v. Harris County Appraisal Dist., 93 S.W.3d 280, 285 (Tex. App.—Houston [14th
Dist.] 2002, no pet.).  To the contrary,
“the trial court must be careful not to step into the role of the fact finder
in weighing credibility . . . .”  Green v. Tex. Workers’ Comp. Ins. Facility,
993 S.W.2d 839, 843 (Tex. App.—Austin 1999, pet. denied).  Instead, determination of admissibility is a
question of law, not a jury decision.  See N. Dallas Diagnostic Ctr. v. Dewberry,
900 S.W.2d 90, 93–94 (Tex. App.—Dallas 1995, writ denied); Weingarten, 93 S.W.3d at 285 (“Reliability is an admissibility
issue for the trial court, not a weight-of-the-evidence issue for the fact
finder.”).

            Second,
a Robinson hearing, whether held
pretrial or at trial, is the same proceeding as trial.  An opponent of expert testimony may object to
reliability when the evidence is offered at trial.  Maritime,
971 S.W.2d at 409.  At trial, a challenge
to an expert is typically made through a voir dire examination outside the presence of the jury: 

 

 class=Section2>

Prior to the expert giving
the expert’s opinion or disclosing the underlying facts or data, a party
against whom the opinion is offered . . . in a civil case may [ ] be permitted
to conduct a voir dire examination directed to the
underlying facts or data upon which the opinion is based.  This examination shall be conducted out of
the hearing of the jury.

 

 

 class=Section3>

Tex. R. Evid.
705(b); see, e.g.,Guadalupe-Blanco River Auth. v. Kraft, 39 S.W.3d 264, 266 (Tex. App.—Austin 2001), rev’d, 77 S.W.3d
805 (Tex. 2002)
(both opinions identifying voir dire
challenge to reliability); N. Dallas
Diagnostic Ctr., 900 S.W.2d at 93, 96. 
However, through case law, Texas courts
have been urged to determine Robinson
issues pretrial: “it is imperative to ventilate any Robinson issues as early as possible, preferably as a pretrial
matter.”  Maritime, 971 S.W.2d at 412 (Gonzalez, J., concurring); see Regan v. Schlumberger Tech. Corp.,
No. 01-00-00026-CV, 2001 WL 1344077, at *3 (Tex. App.—Houston [1st Dist.] Nov. 1, 2001, pet. denied) (not
designated for publication) (“We, too, urge early Robinson/Havner hearings . . . .”).  A pretrial Robinson hearing is no different than one held during trial.  We appropriately consider an evidentiary Robinson hearing to be the same as a voir dire held during trial.  Naturally, we would consider a voir dire directed at an expert’s
reliability upon appellate review of the issue. 
See Guadalupe-Blanco River Auth., 77 S.W.3d at 807.  Accordingly, it is imperative that we
consider the evidentiary hearing held pretrial. 
We should not punish those litigants who ventilate reliability issues
early by refusing to consider the gatekeeper’s hearing.  Under the majority’s approach, the trial
court is converted from a gatekeeper to “idle spectator.”  See
Maritime, 971 S.W.2d at 412 (quoting Robinson,
923 S.W.2d at 554). 

2.  If Held
Reliable, No Repetition Necessary

            The
majority also states that when Exxon renewed its objections at trial, the
plaintiffs had the opportunity to prove scientific reliability and develop a
full record.  The impact of this holding
is, frankly, a waste of judicial resources and an evidentiary absurdity.  First, having passed muster in the
gatekeeper’s hearing, a proponent of expert testimony does not need to parrot
the evidence of reliability at trial.  See Judge Harvey Brown, Procedural Issues Under Daubert,
36 Hous. L. Rev. 1133, 1148 (1999).  In fact, the rules of evidence permit an
expert to testify at trial without disclosure of underlying facts or data: “The
expert may testify in terms of opinion or inference and give the expert’s
reasons therefor without
prior disclosure of the underlying facts or data, unless the court requires
otherwise.”  Tex. R. Evid. 705(a) (emphasis
added).

            Second,
addressing reliability pretrial, rather than before the jury, allows a full
presentation of the issue.  As the Texas
Supreme Court has noted, judges may be better-equipped to determine reliability
than juries.  See Robinson, 923 S.W.2d at 558. 
This is because a judge has the benefit of documents and briefs, whereas
similarly detailed information could easily overwhelm the issues before the
jury.  Id.  The judge “can freely ask questions in a
preliminary hearing and thus glean more information” without the risks
associated with explaining reliability to a jury.  Id.  In so doing, the trial court independently
evaluates the underlying data.  See Havner,
953 S.W.2d at 713.  Additionally, a
hearing before the trial court, as opposed to trial before the jury, solves
rule-based problems with developing the record. 
For instance, in reviewing the trial record, the majority states it is
hard-pressed to conduct a Havner review without the epidemiological studies on which
plaintiffs’ experts relied.  However,
such studies are not admissible at trial even under the learned treatise
hearsay exception.  See Tex. R. Evid. 803(18) (statements from learned treatises may
be read into evidence, but not received as exhibits).  In contrast, in determining reliability in
hearing, a trial court “is not bound by the rules of evidence except those with
respect to privileges.”  Tex. R. Evid. 104(a).  In the case before us, this explains why the
trial court examined epidemiological studies, but such studies were not
admitted at trial before the jury. 

            Third,
a proponent of expert testimony has the burden to prove reliability the first time the opponent objects.  See
Guadalupe-Blanco River Auth., 77
S.W.3d at 807 (“Once the [opponent] made its objection, the burden was on [the
proponent] to establish that [the expert’s] opinion was reliable.”); Robinson, 923 S.W.2d at 557 (at point of
motion to exclude, proponents bore burden to establish admissibility); see also Frias v.
ARCO, 104 S.W.3d 925, 927 (Tex. App.—Houston [14th Dist.] 2003, no pet.)
(summary judgment opinion).  In this
case, Exxon objected pretrial and, because the court denied Exxon’s motions
pretrial, the plaintiffs met their burden to the trial court’s satisfaction.  No authority then requires repeated proof of
reliability just because objections are renewed.  Nor is there any rule requiring plaintiffs to
incorporate by reference at trial their proof from the pretrial hearing.[2]  Here, Exxon’s repeated objections to
reliability accomplished two things only. 
They assured preservation of error, see
United Parcel Serv., Inc. v. Tasdemiroglu,
25 S.W.3d 914, 916 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied), and gave the trial court the opportunity to
reconsider its previous rulings.[3]  Cf.
Clark v. Trailways, Inc., 774 S.W.2d 644, 647 (Tex. 1989)
(renewed objections promote efficient administration of justice by providing a
trial court with a final opportunity to prevent the erroneous admission of
evidence). 

3.  Jury
Determines Weight and Credibility

            The
majority concludes that a no-evidence challenge to reliability “tests the
jury’s decision after trial, looking at the whole trial record to see if any
evidence supports the verdict.”  Although
the majority examines the trial record for more than a scintilla of
reliability,[4]
reliability need not be proved before the jury like an element of plaintiffs’
cause of action.  A negligence cause of
action has just four elements: (1) a legal duty; (2) breach of that duty; (3)
proximate cause; and (4) damages.  Mission Petroleum Carriers, Inc. v. Solomon,
106 S.W.3d 705, 170 (Tex.
2003).  Causation evidence only becomes
“no evidence” if it is unreliable.  See Weingarten, 93 S.W.3d at 285.  Further, as explained above, reliability is a
question of law for the trial court.  If
an opponent never objects, experts can testify at trial to causation without
ever proving their opinions are based on reliable foundations.  See
Maritime, 971 S.W.2d at 411 (failure to timely object waives issue).   

            The
trial court’s gatekeeping function, however, does not
supplant the opportunity to expose weaknesses in expert testimony before the
jury.  Weingarten, 93 S.W.3d at 285. 
Under Robinson standards, the
jury continues “to assess the weight and credibility of the proffered testimony.”  Robinson,
923 S.W.2d at 558.  This is consistent
with the rules of evidence:  “This rule
[that the trial court determines admissibility] does not limit the right of a
party to introduce before the jury evidence relevant to weight and credibility.”  Tex.
R. Evid. 104(e).  Cross-examination remains “the traditional
and appropriate means of attacking shaky but admissible evidence.”  Gammill, 972 S.W.2d at 728; cf. Keo v. Vu, 76 S.W.3d 725, 734 (Tex.
App.—Houston [1st
Dist.] 2002, pet. denied) (“Further, factual weaknesses underlying an expert’s
causation opinion generally go to the testimony’s weight, rather than its
admissibility . . . .”).

4.  Exxon’s
Cross-Examination

            Given
the generalities of direct testimony proffered by plaintiffs, the majority
should hesitate to conclude that the experts’ testimony was unreliable based on
cross-examination and studies absent from the appellate record.  As I pointed out above, an expert may testify
on direct without revealing underlying facts and data and without repeating the
evidence of reliability from the pretrial hearing.  See
Tex. R. Evid. 705(a).  Thus, plaintiffs’ experts testified on direct
at trial in generalities, without offering studies, literature, or data on
which they relied.  For instance, Dr. Goldstein
testified that since his deposition in this case, he found literature
supporting a relationship between benzene and ALL.[5]  Dr. Stuart Lloyd Shalat
testified, “Most of what I’m relying on already exists in the peer-reviewed
literature.”  Dr. Marvin Legator testified that “science” helped him form the
opinion that ALL could result from benzene exposure because “[a]s we did more
and more studies, we added more and more leukemias
and lymphomas in terms of what benzene can do.” 


            The
majority concludes, via Exxon’s cross-examination, that no epidemiological
study meeting Havner’s
standards supports the experts’ opinions. 
Aside from epidemiological studies, perhaps the experts relied upon in vitro human cellular studies.  Or in
vivo studies.  Or animal studies.  The cross-examination does not foreclose
these possibilities.  While
cross-examination of Dr. Goldstein regarding epidemiological studies was very
effective, perhaps Dr. Shalat or Dr. Legator relied upon an epidemiological study meeting Havner standards.  Again, this was not foreclosed by
cross-examination.  In my opinion, it’s
extremely difficult to determine reliability solely based on cross-examination
at trial if a plaintiff meets its burden of proof in a pretrial hearing.  And in this case, while the cross-examination
was quite damaging, without reviewing the Robinson
hearing record, cross-examination goes only to weight and credibility.  Cf.
Maritime, 971 S.W.2d at 414 (Gonzalez, J., concurring) (stating cases in
which expert testimony is untenable on its face, and thus excusing a Robinson hearing, “will be comparatively
rare”); Gammill,
972 S.W.2d at 728 (availability of cross-examination does not relieve the trial
court of its threshold responsibility as gatekeeper). 

            Further,
the Robinson and Havner factors are flexible and
non-exhaustive.  See Havner, 953 S.W.2d at 718–19; Robinson, 923 S.W.2d at 557; see also Daubert
v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593–94
(1993) (promoting flexible inquiry rather than a definitive checklist); Coastal Tankships,
U.S.A., Inc. v. Anderson, 87 S.W.3d 591, 599, 611 (Tex. App.—Houston [1st
Dist.] 2002, pet. denied) (en banc) (“pertinent, suggested inquiries in
assessing the reliability of expert testimony are applied flexibly and are not
exclusive or required.”).  Trial
courts are also granted deference in their selection of the factors to use in
determining reliability.  Kumho Tire Co. v. Carmichael, 526 U.S. 137,
152–53 (1999).  Without the pretrial
hearing record, we do not know if the trial court used additional factors or
which Robinson and Havner factors it
assessed.

            Because
there was an evidentiary Robinson
hearing, the full bases of the experts’ opinions should have been revealed
there.  It is unsound and poor precedent
to assume that 

 class=Section4>

cross-examination was conclusive without consideration
of the very hearing in which reliability was tested.  Using a partial record contradicts the Texas
Supreme Court’s admonition “that courts should make a determination of reliability
from all the evidence.”  Havner, 953 S.W.2d at 720 (emphasis added).

5.  What We
Review and How

            Throughout
this dissent, I have emphasized review of the Robinson hearing, even when it is held pretrial.  The majority contends I have misconstrued
admissibility of expert testimony with its legal sufficiency.  I am not the first to be accused of eroding
the distinction.  See Lucinda M. Finley, Guarding
the Gate to the Courthouse: How Trial Judges are Using Their Evidentiary
Screening Role to Remake Tort Causation Rules, 49 DePaul L. Rev. 335, 376 (1999).  Litigants have also urged that admissibility
and sufficiency reviews are distinct, although both involve the reliability of
expert testimony.  See Austin v. Kerr-McGee Ref. Corp., 25 S.W.3d
280, 284 (Tex.
App.—Texarkana 2000, no pet.).

            However,
others have recognized that review of reliability, even in the context of a
no-evidence challenge, requires review of the Robinson hearing.  The
pretrial Robinson hearing “should be
recorded by the court reporter.  Without
a record from the hearing, the appellant will not be able to show harm.”  Michol
O’Connor, O’Connor’s Texas Rules: Civil Trials 289, § 3.5 (2002). 
Further, an appeal “from a final judgment rendered in a trial in which
the trial court ruled on a motion to exclude an expert . . . must include the
record from the hearing in the appellate record.”  Id. 290, §
5.1.  This is because a party may offer
evidence at the hearing and, having prevailed, not present it before the
jury.  See Judge Harvey Brown, Procedural
Issues Under Daubert, 36 Hous. L. Rev. 1133, 1139 (1999). 
“[T]he evidence from the hearing will be considered in determining both
admissibility and, indirectly, the sufficiency of the evidence, even if the
evidence is not fully presented to the jury.” 
Id.  Indeed, the Texas Supreme Court has stated
that reliability issues go to “the admissibility of expert evidence rather than
the legal sufficiency of the evidence.”  Gen. Motors Corp., 997 S.W.2d at 590. 

            Finally,
as to standard of review, the Texas Supreme Court has recognized that a
no-evidence complaint may be sustained when the record shows one of the
following:  (1) a complete absence of a
vital fact; (2) the court is barred by rules of law or evidence from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more that a mere scintilla; or (4) the
evidence establishes conclusively the opposite of the vital fact.  Maritime,
971 S.W.2d at 409.  By challenging
reliability of the experts’ testimony, and thus admissibility, Exxon contends
the testimony amounts to no evidence because a “rule of law or evidence,”
specifically Rule of Evidence 702, precludes giving the evidence any
weight.  See id.; Exxon Pipeline Co.
v. Zwahr, 35 S.W.3d 705, 718 (Tex. App.—Houston [1st
Dist.] 2000) (Taft, J., dissenting), rev’d, 88 S.W.3d 623 (2002). 
Accordingly, I would begin our analysis by examining the reliability,
and therefore admissibility of the testimony, Zwahr, 35 S.W.3d at 718 (Taft,
J., dissenting), recognizing the trial court’s discretion in determining the
matter.  See id. at 719.  

            I
recognize that some courts conduct de
novo or something similar to a de
novo review in this context.  See Mo. Pac. R.R. Co. v. Navarro, 90
S.W.3d 747, 750 (Tex. App.—San
Antonio 2002, no pet.); Austin, 25 S.W.3d at 285.  However, I would review for an abuse of
discretion because the Texas Supreme Court has done so in the three post-Havner cases in
which it addressed reliability in the context of a no-evidence challenge.  See
Exxon Pipeline Co. v. Zwahr,
88 S.W.3d at 628–29 (reversing Zwahr, 35 S.W.3d at 705); Guadalupe-Blanco River Auth., 77 S.W.3d at 807 (reversing Guadalupe-Blanco River Auth., 39 S.W.3d
at 264); Helena Chem. Co., 47 S.W.3d
487, 499 (Tex. 2001) (affirming Helena
Chem. Co. v. Wilkins, 18 S.W.3d 744 (Tex. App.—San Antonio 2000)).  In dissenting, however, I find that the
degree of deference to give on appellate review is a less pressing question
than whether we can ignore evidence from the gatekeeper’s hearing. 

Appellate Law Spurned

1.  The Record
Filed

            The
primary reason the majority discounts the pretrial Robinson hearing is that the transcript and evidence from it are
not in the appellate record.[6]  Under established appellate law, we cannot
consider whether error exists unless the record relating to the alleged error
is before us.  Foust v. Estate of Walters, 21 S.W.3d 495, 504 (Tex. App.—San
Antonio 2000, pet. denied).  Further, as
appellant, Exxon had the burden to bring forth a sufficient record showing
error.  See Melendez v. Exxon Corp., 998 S.W.2d 266, 274 (Tex. App.—Houston
[14th Dist.] 1999, no pet.).  “Absent
such a record, the reviewing court must presume that the evidence before the
trial judge was adequate to support the decision.”  Simon
v. York Crane & Rigging Co., 739 S.W.2d 793, 795 (Tex. 1987); see also Foust, 21 S.W.3d at 504.  

            The
effect of these precepts on this case ends in an affirmance:
two plaintiffs keep their verdict and four plaintiffs collect nothing.  For Exxon’s appeal, because we are missing
the pretrial Robinson record, we must
assume that evidence of reliability presented at the Robinson hearing supports the trial court’s decision to admit the
experts’ testimony.  Because we must
assume the testimony was properly admitted, the experts’ causation evidence is
legally sufficient for plaintiffs James Makofski, Jr.
and John Russell.  The lack of a Robinson record cuts both ways in this
case, however, and similarly hinders the cross-appeal filed by plaintiffs
Andrea Russell, Janie Devora, Phillip Devora, and Codi Stennett.  They
contend that one study, the ATSDR, supports causation testimony regarding
benzene exposure and their health problems. 
However, the ATSDR is not in the trial record.  By the same standards that stymie Exxon’s
appeal, we must assume the Robinson
hearing record 

 class=Section5>

supports the trial court’s ultimate decision that
expert testimony in their cases was unreliable.

2.  Legal
Contortions

            To
avoid the effect of the missing record, the majority engages in legal
contortions.  First, the majority excuses
Exxon from bringing forward a complete appellate record because neither party
raised or briefed the argument. 
Certainly, inadequate briefing can result in waiver of an appellant’s
issue.  See Campbell v. State, 85 S.W.3d 176, 184 (Tex. 2002)
(cited by majority).  However, waiver of
error due to inadequate briefing is distinct from the burden to bring forth a
record on appeal.  Additionally, because
it is an appellant’s burden to bring forth a record showing error, I do not
assign blame to the appellees, as the majority does,
for failing to brief the omissions in the appellate record.  I also do not excuse the missing record, as
the majority does, because “the very capable attorneys and experienced trial
judge all certainly knew when a record is required and when it is not.”  There is no deference on appellate review
based on attorneys’ or judges’ reputations. 


            Second,
the majority implies that 270 pages of Exxon’s motions to exclude and
supporting exhibits suffice in lieu of the reporter’s record from the Robinson hearing.[7]  In this approach, the majority pretends that
the Robinson hearing was held by
submission.  In fact, when the plaintiffs
originally sought a hearing by submission, Exxon protested and sought an
evidentiary hearing, which was held 11 days before the start of trial.  The majority also fails to acknowledge that
plaintiffs filed written objections to some of the exhibits attached to Exxon’s
motions.  We do not know whether these
objections were ruled upon.  And we also
do not know whether the exhibits attached to Exxon’s motions encompass those
offered and admitted in hearing.  I do
not imply that a trial court must hold an evidentiary hearing instead of ruling
by submission.[8]  However, if an evidentiary hearing is held, one
party’s filings in the clerk’s record are not a substitute on appeal for the
reporter’s record of the hearing. 

            Third,
the majority surprisingly and wrongly concludes that there was no evidence
presented at the pretrial hearing.[9]  To this end, the majority assumes that a
trial court would hold an evidentiary hearing only to receive live testimony
from the experts.  I disagree.  I do not suggest that the pretrial hearing in
this case included live testimony.  Nor
do I imply that all evidentiary hearings on reliability must include live
testimony.  Instead, evidence in a
pretrial evidentiary hearing could include depositions, studies, and documents.[10]  In this case, the trial record and clerk’s
record reflect that the trial court held an evidentiary hearing, but do not
delineate what evidence was offered or admitted in that hearing. 

            Fourth,
the majority wrongly concludes that under my analysis, “every time a pretrial
motion . . . is denied without a reporter’s record, we must presume any jury verdict thereafter is valid (no
matter how scientifically unsound).”  We
will only need a reporter’s record of evidentiary Robinson hearings, not hearings by submission.  Further, I leave open the possibility that in
rare cases, expert testimony will be untenable on its face.  See
Maritime, 971 S.W.2d at 414 (Gonzalez, J., concurring).

            Fifth,
the majority presumes that the parties “never requested that the hearing be
recorded.”  The record is silent as to
whether the parties requested or excused the court reporter from the pretrial
hearing.  However, failure to request
that a hearing be recorded does not excuse an appellant’s burden to bring forth
a record showing error.  Further, Exxon
specifically designated the pretrial Robinson
record as part of the appellate record:

 








The pre-trial “Robinson” hearing held on September 30, 1999. . . . This request includes all exhibits offered
or admitted into evidence either for the Court or for the jury at the hearing
of September 30, 1999 or at trial on the merits
beginning October 11, 1999 and ending November 19, 1999.  

 

Thus, we cannot presume the record we have is the
entire record pertinent to reliability.  See Andrews v. Sullivan, 76 S.W.3d 702,
704 (Tex.
App.—Corpus Christi 2002, no pet.) (sufficiency challenge waived where party
did not request partial record and failed to file exhibits in appellate
record); see also Sandoval v. Comm’n for Lawyer Discipline, 25 S.W.3d 720, 722 (Tex.
App.—Houston [14th
Dist.] pet. denied).  

            Sixth,
in discounting the missing Robinson
record, the majority states it was plaintiffs’ “burden to present
scientifically reliable evidence of causation at trial.”  In citing Havner and Robinson for this proposition, the
majority ignores Maritime, decided
after those cases.  In Maritime, the court encouraged pretrial
resolution of reliability issues.  971
S.W.2d at 409.  Thus, the majority’s
citations to Havner
and Robinson are taken out of
context.  Neither case supports the
contention that we review only the evidence presented at trial before the jury.

            Seventh,
the majority circularly concludes that the trial cross-examination both proves
unreliability and rebuts the presumption we give to the missing record.  However, the majority fails to cite a single
case in which the presumption given the missing record is rebutted by that
which is available.[11]  I have already discussed the limitations of
cross-

 class=Section7>

examination in this case given the generalities of
direct testimony.  The cross-examination
simply did not foreclose the bases of the experts’ opinions.  If the bases of their opinions are not
foreclosed, we presume that the missing record provides the evidence of
reliable bases.  I think a stronger case
for rebuttal would be presented, for example, where the existing record proves
that no evidence was offered, admitted, or submitted in the missing pretrial
hearing.  Or where the existing record
clearly delineates what the trial court reviewed in pretrial hearing.  In truth, it is the majority who pretends in
this case, allowing its reactions to the trial testimony to blur the requisites
for appellate review. 

            Finally,
if all the above approaches fail the majority’s reasoning, the majority creates
a safety net by simply making its own appellate record.  Before oral argument, we became aware of some
of the deficiencies in the record. 
During argument, the parties acknowledged that the trial court examined
scientific studies not included in the appellate record.  At Chief Justice Brister’s
request, the parties filed fourteen studies as exhibits to their briefing.  His request was an implicit acknowledgment
that we must review the evidence which the trial court reviewed.  Exxon properly objected, asserting that such
studies were outside the trial record. 
We may not create a new record on appeal.  Richards
v. Comm’n for Lawyer Discipline, 35 S.W.3d 243,
251 (Tex. App.—Houston [14th
Dist.] 2000, no pet.); Intermarque Auto. Prod., Inc. v. Feldman, 21 S.W.3d
544, 547 n.3 (Tex. App.—Texarkana 2000, no pet.).  Materials attached to briefing, but not in
the appellate record, cannot be considered by an appellate court.  Till v.
Thomas, 10 S.W.3d 730, 733–34 (Tex. App.—Houston [1st Dist.] 1999, no
pet.); Tex. R. App. P. 34.1. 

 class=Section8>

Judicial Perspective

            Judges
are human and are affected by the facts of the cases before them.  In this case, the trial record imparts a gut
reaction that plaintiffs’ experts are, at best, on the minority (though perhaps
leading) edge of science and, at worst, absolute quacks.  As judges, we are also aware of cases
discussing the limitations of science, benzene and toxic exposure, and
cancers.  See Frias, 104 S.W.2d at 925; Daniels v. Lyondell-Citgo
Ref. Co., Ltd., 99 S.W.3d 722, 726 (Tex. App.—Houston [1st
Dist.] 2003, no pet.); Navarro, 90
S.W.3d at 747; Austin, 25 S.W.3d
at 280.  However, justice should not give
into visceral reactions to a case. 

            We
must follow procedural rules.  We must
enforce requisites for appellate review. 
If procedural and appellate law preclude a review on the merits, we must
write accordingly.  And in this case, the
incomplete record precludes a true review on the merits.  Whether an appellate court can disregard the
gatekeeper’s hearing in a no-evidence context is the material issue in this
case, upon which a take nothing judgment or an affirmance
rests.  The answer to the issue will also
clarify for all courts and litigants the correct procedure for challenging an
expert and proving reliability.  I thus
urge review of this case by the Texas Supreme Court.  Although we may have decided the case
differently were we jurors, appellate court judges must apply rules and law
consistently and even-handedly. 
Otherwise, we diminish rule of law, predictability, and regularity
necessary to guide future litigants. 

            Under
the standards I have discussed in this dissent, I would overrule Exxon’s
issues, overrule plaintiffs’ cross-issues, and affirm the trial court’s
judgment.  Because the majority has not
followed established rules and standards for appellate review, I dissent.

 

 

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment
rendered and Majority and Dissenting Opinions filed July 24, 2003.

Panel consists of Chief Justice Brister and Justices
Edelman and Seymore.  (Brister, C.J.
majority.)

 

 

 











            [1]  Exxon challenges the contamination causation
testimony presented by Professor Patrick Agostino (a
geologist), Dr. Joseph Hughes (a professor of environmental science and
engineering), Dr. Phillip Gschwend (a chemical
oceanographer), Dr. Dennis McLaughlin (a hydrologist), and Dr. Jack Matson (an
environmental engineer).  Further, Exxon
challenges the medical causation testimony provided by Dr. Marvin Legator (a toxicologist), Dr. Bernard Goldstein (a
toxicologist and hematologist), Dr. Stuart Lloyd Shalat
(an epidemiologist), and Dr. Michael Gray (a medical doctor).





            [2]  Nor did Exxon need to incorporate by
reference evidence from the pretrial hearing. 
However, by suggesting that either party could incorporate such proof by
reference at trial, the majority again implicitly acknowledges our need to
review the evidence which the trial court reviewed as gatekeeper.   





            [3]  And the trial court did reconsider its
rulings as to four plaintiffs, finding no reliability and thus no evidence of
causation. 





            [4]  For instance, the majority states “it cannot
grant even a scintilla of weight” to general references to studies that are not
in the trial record.





            [5]  The majority emphasizes cross-examination of
Dr. Goldstein in which he admits he provided no animal or epidemiological
studies to Exxon since his deposition. 
However, this goes to supplementation of discovery, not the existence or
non-existence of studies. 





            [6]  Nor can it appear in the record.  On file with this court at our request is a
letter from the official court reporter in which she advises that there was no
reporter’s record made by her on September 30, 1999, the day of the Robinson hearing.





            [7]  If the plaintiffs filed responses to Exxon’s
motions to exclude, Exxon did not bring them forward on appeal.  The clerk’s record is entirely one-sided.





            [8]  Cf.
Tanner v. Westbrook, 174 F.3d 542, 546 (5th Cir. 1999) (where trial court
refused to hold pretrial hearing, appellate court reviewed documents that were
submitted pretrial).





            [9]  The majority reaches this conclusion because
Exxon’s counsel introduced himself to the experts at trial and cross-examined
them without referring to the pretrial hearing.





            [10]  For instance, with regard to contamination
causation, the plaintiffs contend they used “Exxon’s numbers” to calculate the
amount of benzene lost in the blowout. 
Exxon’s documents evidencing such numbers could be presented without
live testimony. 





            [11]  The majority miscites
Candelier v. Ringstaff,
786 S.W.2d 41, 44 (Tex. App.—Beaumont 1990, writ denied).  Unlike this case, in Candelier, the appellant
requested a partial reporter’s record
from two post-trial hearings only.  Under
the rules of appellate procedure, the “appellate court must presume that the
partial reporter’s record designated by the parties constitutes the entire
record for purposes of reviewing the stated points or issues.”  Tex.
R. App. P. 34.6(c)(4).  In one of
the post-trial hearings, the Candelier trial court clearly stated that it was considering
the evidence from trial in determining the post-trial issue.  Thus, the Beaumont appellate court realized it
did not have the entire record pertinent to the issue.  

 

            Here, we know the record pertinent to reliability is
incomplete because (1) during trial, the trial court and attorneys referred to
the pretrial objections, rulings, and evidence; (2) the clerk’s record reflects
that Exxon demanded and received an evidentiary Robinson hearing; and (3) in oral argument, the attorneys
acknowledged the trial court examined studies not a part of the trial record.